UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM D. THOMAS,

               Plaintiff,          Civil Action No. 20-12105

v.                                        Paul D. Borman
                                        United States District Judge

JULIUS MAYFIELD,           David R. Grand
                                         United States Magistrate Judge

               Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 19)**

On August 5, 2020, *pro se* plaintiff William Thomas ("Thomas") filed his complaint in this matter, pursuant to 42 U.S.C. § 1983, alleging a claim for First Amendment retaliation against defendant Julius Mayfield ("Mayfield"). (ECF No. 1). An Order of Reference was entered on April 29, 2021, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 10).

On February 7, 2022, Mayfield filed a motion for summary judgment. (ECF No. 19). After requesting and being granted multiple extensions of time, Thomas filed a response to this motion on April 27, 2022, and Mayfield filed a reply on May 11, 2022. (ECF Nos. 29, 30).

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

**I.     RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Mayfield's Motion for Summary Judgment **(ECF No. 19)** be **DENIED**.

**II.    REPORT**

    **A.    Factual Background**

Thomas is currently an inmate of the Michigan Department of Corrections ("MDOC"), housed at the Macomb Correctional Facility in New Haven, Michigan. However, the events at issue in this case took place in 2018, when Thomas was housed at the St. Louis Correctional Facility ("SLF") in St. Louis, Michigan. At that time, Mayfield was employed as SLF's Classification Director.

    *1.    Thomas' Version of the Events*

In his complaint, Thomas alleges that, on May 17, 2018, he was found guilty of a "contraband" and "unauthorized communication" minor misconduct for possession of a handwritten note. (ECF No. 1, PageID.2). Thomas further alleges that, the next day, Mayfield terminated him from his unit porter job assignment. (*Id.*). He claims he was notified of this termination via an undated MDOC Prisoner Program and Work Assignment Evaluation form ("CSJ-363") that was attached to an MDOC Work-School Offender Termination Supervisor Memo (dated May 18, 2018), which listed the reason for termination as "guilty of a misconduct." (*Id.*).

According to Thomas, on May 24, 2018, "the minor misconduct finding which [his] termination rested on was reversed on appeal based in part on there being no department or facility rule prohibiting the possession of a handwritten note from or to another

prisoner." (*Id.*). Thomas further claims that he wrote to Mayfield on May 29, 2018, explaining that because he had been terminated from his job assignment for a guilty finding on the minor misconduct, which subsequently was reversed on appeal, his termination should not stand. (*Id.*, PageID.2-3). Thomas requested reinstatement to his unit porter position and back pay, and indicated he would file an administrative grievance if his termination was not rescinded. (*Id.*, PageID.3).

Thomas alleges that, on June 4, 2018, he was summoned to Mayfield's office for a meeting, during which he was presented with an altered copy of the May 18, 2018 Work-School Offender Termination Supervisor Memo. (*Id.*). Allegedly, the altered version of the memo had the original date and reason for termination redacted and, in those places, Mayfield wrote that Thomas had been terminated for "violating the integrity of the position" on "6-4-18." (*Id.*). According to Thomas, Mayfield told him "that he had never been terminated for being found guilty of a misconduct" and that he was not entitled to reinstatement or back pay. (*Id.*). When Thomas objected, producing a copy of the original memo and explaining how Mayfield's actions violated MDOC policy, Mayfield allegedly became visibly upset and told Thomas "that since he wanted to press the issue he was reclassifying [Thomas] as 'unemployable' because 'you won't drop it.'" (*Id.*, PageID.4-5). Later the same day, Thomas received a memo, dated June 4, 2018, indicating that Mayfield was placing him on "Room Restriction" indefinitely, meaning that he lost all privileges, leisure time activities, and good time and disciplinary credits for an unspecified period of time. (*Id.*, PageID.5-6). Thomas further alleges that Mayfield issued a memo, also dated June 4, 2018, classifying him as "unemployable" and that this classification

3

remained in effect for more than seven months, despite repeated requests to be reclassified. (*Id.*, PageID.6-7). Only after Thomas filed a written grievance on December 4, 2018, alleging that Mayfield improperly failed to remove him from unemployable status was this classification finally removed on January 14, 2019. (*Id.*, PageID.7).

### 2. *Mayfield's Version of the Events*

Mayfield's version of the events differs significantly from Thomas'. Indeed, Mayfield makes no mention of the misconduct issued to Thomas for "contraband" and "unauthorized communication" (which was later reversed on appeal). Rather, Mayfield claims that Thomas was placed on unemployable status on June 4, 2018, because of his "repeated violation of rules while on job assignments." (ECF No. 19, PageID.72). Specifically, Mayfield points to the following incidents:

- In March 2016, Thomas was evaluated on a CSJ-363 for his prison job as a porter while at Bellamy Creek Correctional Facility. (*Id.*, PageID.87). That evaluation states: "Inmate Thomas does not follow directives from officers and requires very close supervision. Recommend termination." (*Id.*).

- In October 2016, while housed at Kinross Correctional Facility, Thomas attempted to steal 2.5 pounds of sugar from the kitchen while he was working as a line server. (*Id.*, PageID.89). A CSJ-363 was issued recommending termination from this job assignment. (*Id.*, PageID.91).

- In November 2016, while housed at Chippewa Correctional Facility, Thomas was found guilty of "Sexual Misconduct" and "Out of Place" misconduct violations, terminated from his food service job, and reclassified to administrative segregation. (*Id.*, PageID.93-97).

According to Mayfield, some eighteen months later, in May 2018, SLF Corrections Officer Andres completed the CSJ-363 at issue in this case, noting that Thomas "attempted to pass a handwritten note while on assignment and attempted to discard that contraband

4

after being told to report to the unit bubble for a shakedown."[1]  (*Id.*, PageID.106).  CO Andres further commented that Thomas' "actions present a security risk that make him unsuitable for continued employment" and recommended his termination from the unit porter position.  (*Id.*).  Mayfield avers that he subsequently terminated Thomas from his porter position based on this behavior and as a result of this recommendation.  (*Id.*, PageID.128).  Mayfield further asserts that, on June 4, 2018, he issued a memo designating Thomas as unemployable due to his "documented history of disruptive behavior on a work assignment."[2]  (*Id.*, PageID.108).  Thus, Mayfield asserts that this unemployable restriction was not imposed in retaliation for Thomas' request for reinstatement to his unit porter position but was "clearly based on Thomas' history of disruptions on job assignments and was done in accordance with MDOC policy."  (*Id.*, PageID.75).  According to Mayfield, Thomas remained on unemployable status because he failed to properly follow procedure by requesting to be removed from this status.  (*Id.*, PageID.76-77).

**B.    Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir.

---

[1] SLF's housing unit rules state that "[p]risoners may not pass items through the slots or under the cell doors without staff authorization" and "[t]here shall be **No** item(s) passed from prisoner to prisoner or cell to cell."  (ECF No. 19, PageID.115, 116) (emphasis in original).

[2] MDOC Policy Directive 05.01.100 states that a prisoner "may be reclassified as unemployable" and therefore be ineligible for work if he "has a documented history of disruptive behavior on a work or academic assignment."  (ECF No. 19, PageID.123).

2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

    **C.**    **Analysis**

As set forth above, Thomas' sole claim against Mayfield is for First Amendment retaliation. Specifically, Thomas alleges that because he "attempt[ed] to resolve his erroneous termination from his work assignment" by invoking the MDOC's grievance

6

procedure, Mayfield retaliated against him by placing him on "Unemployable/Room Restriction" status. (ECF No. 1, PageID.7). Thomas also alleges that Mayfield further retaliated against him by keeping him on this status for an extended period of time because he grieved his initial unemployable designation. (*Id.*).

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff participated in constitutionally-protected activity; (2) the defendant took an adverse action against the plaintiff likely to chill a person of "ordinary firmness" from continuing to engage in the protected conduct; and (3) there is a causal connection between elements one and two – that is, that "the adverse action was motivated at least in part by [the plaintiff's] protected conduct." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). In this case, Mayfield does not dispute the first two elements of Thomas' retaliation claim – namely, that Thomas engaged in protected conduct by complaining about his termination from the unit porter position and subsequent designation as "unemployable," and that he suffered adverse actions when he was placed (and kept) on unemployable/room restriction status. Thus, the issue before the Court is whether Thomas has raised a genuine issue of material fact as to a causal connection between the protected activities and the adverse actions.

In his motion for summary judgment, Mayfield asserts that Thomas was terminated from his unit porter position in May 2018 when he was caught violating SLF unit rules by attempting "to pass a handwritten note while on assignment and attempt[ing]to discard that contraband after being told to report to the unit bubble for a shakedown." (ECF No. 19,

7

PageID.106). Mayfield avers that he terminated Thomas from his porter position based on this behavior, CO Andres' assessment that these "actions present[ed] a security risk that ma[d]e him unsuitable for continued employment[,]" and CO Andres' recommendation that Thomas be terminated. (*Id.*, PageID.128). Mayfield further asserts that Thomas was placed on unemployable status due to his "documented history of disruptive behavior on a work assignment" and that he remained on this status because he did not ask to be removed. (*Id.*, PageID.76-77, 108). Thus, Mayfield argues that the adverse actions at issue were not taken because of Thomas' protected activity, but for legitimate, non-retaliatory reasons. Summary judgment for Mayfield is inappropriate because Thomas has raised a material question of fact regarding the reasons advanced for his termination, subsequent classification as unemployable, and failure to remove him from this status.

First, construed in a light most favorable to Thomas – as the Court must do at this stage of the case – the documents and other evidence on which Thomas relies support his contention that he was terminated from his porter position "for a misconduct that was overturned on appeal in violation of MDOC policy" and that only when he demanded reinstatement and back pay did Mayfield change course and characterize the reason for his termination as "Violates the integrity of the position[.]" (ECF No. 30, PageID.190). Specifically, Thomas attached to his summary judgment response what appears to be the original "Work/School Offender Termination Supervisor Memo" indicating that he was terminated from his work assignment because he was "guilty of a misconduct," and another version of that same document with that verbiage scratched out and instead indicating that Thomas was terminated because he engaged in unspecified conduct that "violates the

8

integrity of the position." (*Id.*, PageID.204, 206).  Thomas avers that the change was made "immediately after" he complained to Mayfield.  (ECF No. 1, PageID.3).  While temporal proximity between the alleged adverse action and the protected conduct, without more, is generally insufficient to establish the causal connection element of a First Amendment retaliation claim, *see Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) ("Without more, however, his conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."); *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) ("[W]e rejected the proposition that temporal proximity is enough" to establish a causal connection.), Thomas avers that he was not classified as unemployable at the time of his termination, but when he pushed the issue on June 4, 2018, insisting that Mayfield was violating MDOC policy, Mayfield "told [him] he was being reclassified as unemployable status ***because he wouldn't drop the issue*** ...."[3]  (ECF No. 30, PageID.190 (emphasis added); ECF No. 1, PageID.3-5).  In his declaration, Mayfield fails to offer any explanation for the termination memo discrepancy.  There thus exists a material question of fact as to the reasons for Thomas' termination and reclassification.

Thomas also asserts that, contrary to Mayfield's claim that Thomas never asked to be removed from unemployable status, he made "repeated monthly requests" to be removed from this status.  (ECF No. 30, PageID.191; ECF No. 1, PageID.7).  Thomas also

---

[3] Indeed, according to Thomas, on the morning of June 4, 2018, prior to his meeting with Mayfield, he was reclassified "to unit porter and kitchen worker pools at the request of a supervisory staff," which supports his claim that, until he voiced opposition to Mayfield's continued violation of MDOC policy, he "was considered employable by Mayfield and was merely awaiting assignment[.]"  (ECF No. 30, PageID.191).

claims that MDOC policy does not require an inmate to *request* removal from unemployable status; rather, the policy provides that prisoners classified as unemployable "*shall be considered* for reclassification every 30 calendar days until a reclassification is complete."[4] (*Id.*, PageID.191, 222) (emphasis added).  At this stage of the proceedings, the Court does not judge credibility, and must consider the record evidence in the light most favorable to the non-moving party.  Doing so, the Court finds that Thomas has come forward with evidence suggesting that his protected activities were motivating factors in Mayfield's decisions to take the adverse actions at issue.

Recently, the Court had occasion to consider a situation such as this, where the parties disputed whether a causal connection existed between the plaintiff's protected activity and the adverse action.  *See Miller v. Klee*, No. 17-11006, 2020 WL 833322, at *10 (E.D. Mich. Jan. 27, 2020).  In that case, the Court explained:

> It is not for the court to decide if plaintiff's allegations are truthful. What is required is that the court determine if there is sufficient evidence for the fact finder to determine that the adverse action was motivated in part by the protected conduct.  In making that determination, the facts have to be viewed in the light most favorable to the non-moving party, which in this case is the plaintiff.  Here, the crux of the issue is the question of causation – whether the adverse action taken against plaintiff was motivated at least in part by the plaintiff's protected conduct.  [T]he causation element of Plaintiff's First Amendment retaliation claim looks to Defendant's motivation in [taking the adverse action].  When the defendants' intent is at issue, summary judgment is particularly inappropriate.

---

[4] In his motion, Mayfield points out that the June 4, 2018 memo placing Thomas on unemployable status states, "**RESTRICTION IS INDEFINITE AND WILL NOT AUTOMATICALLY RESCIND**[.]"  (ECF No. 19, PageID.108) (emphasis in original).  However, the very next sentence of the memo provides: "This restriction will begin on 6/5/18 ***and will be reviewed every 30 days***."  (*Id.*) (emphasis added).

*Id.* (internal citations and quotations omitted). As set forth above, then, the record evidence is contradictory as to why Thomas was terminated from the unit porter position, designated as unemployable, and remained on unemployable status for more than six months. Thus, at least on the present record, a genuine issue of material fact exists as to the causal element of Thomas' retaliation claim.

That alone does not get Thomas past Mayfield's motion; rather, the burden shifts to Mayfield to show that he would have taken the same actions in the absence of the protected activities. *See Miller*, 2020 WL 833322, at *11 (citing *Thaddeus-X*, 175 F.3d at 399). Where a defendant can show non-retaliatory motives for his actions, "summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Wenk v. O'Reilly*, 783 F.3d 585, 594 (6th Cir. 2015) (internal quotations omitted). Here, Mayfield avers:

> 7. I processed Thomas' classifications at SLF based on his specific circumstances and history, just as I would any other prisoner, and all decisions made regarding Thomas' classification were done pursuant to MDOC policy. Neither Thomas' complaints nor grievances played any role in my classification decisions regarding Thomas….

(ECF No. 19, PageID.128). In his motion for summary judgment, Mayfield further argues that the unemployable restriction was indefinite in nature, Thomas was advised what action must be taken to remove the restriction, and he failed to do so; thus, Mayfield would have taken the same action with respect to the length of the restriction regardless of any grievance filed by Thomas. (*Id.*, PageID.79).

Contrary to Mayfield's reply brief argument, the issue isn't whether a prison official's failure to follow policy can itself give rise to a constitutional violation – it cannot.

*See Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir.1994) (prison regulations "do not create an independent federal due process liberty interest or right in the prisoner"); *see also Coleman v. Martin*, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005) ("the failure of a prison, or the state, to follow its own policies and procedures does not amount to a constitutional violation"). Rather, the types of conclusory statements put forth by Mayfield are simply insufficient to conclusively establish that Mayfield would have taken the same actions absent Thomas' protected activities. *See Thaddeus-X*, 175 F.3d at 399 (where defendants did "little more than deny the allegations put forth by plaintiffs," they did not meet their burden at the summary judgment stage). This is particularly true where intent is an issue, and Mayfield failed to address the discrepancy in the termination memo discussed above. *See Miller*, 2020 WL 833322, at *10. Thus, genuine issues of material fact preclude granting summary judgment in Mayfield's favor on Thomas' retaliation claim.[5]

---

[5] Mayfield also argues that he is entitled to Eleventh Amendment immunity as to Thomas' official capacity claims. (ECF No. 19, PageID.80-82). The Sixth Circuit has recognized that, with respect to § 1983 suits against individuals in their official capacities, "the Eleventh Amendment permits prospective injunctive relief, but not damage awards[.]" *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000). Here, Thomas requests an injunction ordering Mayfield to "[e]xpunge the classification actions from this matter from the Plaintiff's institutional record and or create memorandum that the actions were erroneous and the documents were falsified by Defendant." (ECF No. 1, PageID.8). Mayfield argues that this request seeks retrospective – rather than prospective – injunctive relief because Thomas "is not requesting an injunction be issued to do something to stop Mayfield from violating [his] constitutional rights." (ECF No. 19, PageID.81). The Court disagrees, as it is certainly possible that even prior classification decisions could impact Thomas' future treatment in prison. *See Gordon v. Collins*, No. 08-12989, 2009 WL 3210932, at *2 (E.D. Mich. Sept. 30, 2009) (holding that request for injunction expunging designation of plaintiff as a gang member in prison records appears to seek prospective injunctive relief). Mayfield also argues that because Thomas is no longer housed at SLF, he "does not have access to Thomas' file"; thus, issuance of the requested injunction would require the actions of a non-party, which is impermissible under Fed. R. Civ. P. 65(d)(2). (ECF No. 19, PageID.81-82). In support of this assertion, Mayfield cites to his sworn declaration; however, the declaration says

## III.  CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Mayfield's Motion for Summary Judgment **(ECF No. 19)** be **DENIED**.

Dated: July 7, 2022  　　　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan  　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

---

nothing about Mayfield's ability or inability to access Thomas' institutional file.  Under the circumstances, then, Thomas' official capacity claims should not be dismissed.

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 7, 2022.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
